Good morning, Your Honors. May it please the Court. I was wondering if the Court would prefer me to address the merits of the appeal or the new information that was submitted last week regarding the bargaining history subsequent to the submission of the case before the Court. Counsel, how can we go beyond the record that's before us on appeal? Well, I don't think that you can, Your Honor. Let's address the merits of the appeal. Okay. Thank you. The issue here before the Court really is the timeliness of the intervention motion. And it's our position that the trial court erred in finding the intervention motion untimely, because ALADS did move immediately after being notified by counsel for the plaintiff class in this litigation that their rights in their collective bargaining agreement could be adversely affected by the ongoing negotiations between the parties to the litigation over the proposed new procedures for selecting candidates for bonus positions. Shouldn't you have known all along that ALADS' position could be affected by negotiations regarding the sheriffs? Well, no, Your Honor. And the reason that ALADS was not aware that their bargaining rights would be affected by the ongoing negotiations between the parties was because there was a longstanding bargaining history between the sheriff's department and ALADS regarding specifically the bonus provision section of the contract, which was triggered by the department telling ALADS we have to make a change to this position or that position or the selection of a certain position based on the plaintiff class counsel's representation that those changes needed to be made to comply with the trial court's orders. We actually negotiated 77 changes in the time period when the parties to the litigation had hired AON to create the validation studies. ALADS was not aware of those validation studies or, more importantly, the parties' plan to use those validation studies to completely eliminate the bonus selection criteria provision which is in the contract. Rather, the parties led us to believe exactly the opposite because they came to us 77 different times and said we just need to tweak this and make a few changes based on what's necessary to comply with the trial court's orders. So, no, ALADS was not on notice, had no reasonable way to know that these ongoing negotiations to which they were not a party, which they had no notice, which they were never advised of, would, in fact, or were intended by the parties to change and, in fact, eliminate the bonus provisions of the MOU. Well, they settled to their satisfaction and withdrew from the litigation, didn't they? That was yes. That is true, Your Honor. But that occurred in. Well, they didn't have to. Nobody forced them to. They could have stayed until there was a final judgment entered. That's true. But at the time that ALADS settled out of the litigation, the bonus provision of the contract was not even in the contract yet. There wasn't a final judgment either. That was a class action certified. I understand that, Your Honor, but. So if they wanted out, they got out. But the issue about the bonus selections wasn't an issue in the litigation at the time ALADS got out. It became an issue after the consent decree in 1993. Well, then the government, the sheriff's office starts spending millions of dollars on these studies, and it goes on and on and on and on for a long period of time, doesn't it? And nobody does anything, right? Well, no, that's not true, Your Honor, because actually. Didn't they get in the minute the study was authorized? No, because we didn't know that the study was authorized. But the point is that what we didn't know was that the study was designed to change the existing MOU provisions. Instead, they led us to believe the opposite, that the existing MOU provisions could coexist with the study because they came to us 77 times and said, all we need to do is make this change and we can comply with what the Court requires. So they didn't. Isn't the decree and the court action pending now going to be res judicata against everybody that's going to have a claim against these findings in the study? I'm sorry. Could you repeat the question? I didn't hear it. Are the findings of the study adopted by management going to be res judicata against anybody else litigating the subject matter again? I'm certain that the Department will argue that, yes. And that's the reason why ALADS wants to get into the litigation now before the plan is adopted. What's in the record showing when you first became aware of the problem? The letter from Mr. Harley dated April 2nd, 2003 was when we were first notified, had any notice that the AON study was designed to supplant the provisions of the MOU. What we knew before that was, yes, there was this study going on, but that it would be coexisting with the MOU because they kept asking us to renegotiate specific issues, specific provisions of that section and how it applied to specific positions within the Department. So for the AON study was initially commissioned in 2000, I believe it was, and between 2000 and 2003, there were 70, almost 100 different occasions while that study was going on that we negotiated changes that they felt were necessary to comply with the court's orders and the studies. It wasn't until they decided when the study was completed that they were going to implement that wholesale and eliminate the contract provisions. So it — and that was what prompted Mr. Harley's correspondence to us on April 2nd, was that now the AON study was completed or nearly completed and to the point now where the parties were discussing implementation rather than simply defining the positions and the — how the study was going to be conducted. So that was the first that we had notice of that. And if the Court doesn't have any further questions, I'd prefer to maintain the remainder of my time for rebuttal. You may do so. Thank you, Your Honor. May it please the Court. I am Jeffrey Dabosky, and I represent the defendants and appellees. With me here today is Douglas Hart, also representing the defendants, as well as Dennis Harley, who is counsel for the plaintiffs in this litigation. The plaintiffs and defendants have disagreed about many things over the course of this 25-year-old consent decree litigation. But we're here today at the same table because we both agree that the intervention of ALADS will hinder and delay the Department's efforts to comply with the consent decree and related orders. The issue for the Court is whether the district court abused its discretion in finding that ALADS was untimely in moving to intervene. There is no evidence in the record to support the claim that the district court abused its discretion in this regard. The district court's determination — Do you agree that the Court's decree is not going to have res judicata effect in the labor negotiations that are ongoing in the future? If I understand your question, Your Honor, you're asking if ALADS is allowed to intervene, will that have an impact? If they remain barred from the litigation, they didn't participate in any of this, then along comes labor negotiations. You're going to pull this consent decree out of your pocket and say we have to do this because the district court ordered it? Or is it an open book for negotiation as to what effect this decree has on future labor relations? Our obligation to collectively bargain is completely separate from our obligation to comply with the consent decree. So this is not res judicata in the labor negotiations? Certainly the impact of the district court's order might influence the way that the Department approaches its collective bargaining negotiations. Why aren't they a real party in interest? ALADS, Your Honor? Yes. ALADS is not a real party because of the fact that our collective bargaining obligations are separate from our obligations in this litigation and the consent decree. Well, you want them both ways, then. You want to say they're separate and that this will affect their labor negotiations. I respectfully disagree, Your Honor, because the Department has an obligation to engage in collective bargaining negotiations. All right. Without being impaired by this consent decree? I don't understand your question, Your Honor. What effect does the consent decree have on the labor negotiations? None? Absolutely none? Can I write that in an opinion based on your representation today? No, Your Honor. You can't, can I? The Department will certainly engage in collective bargaining negotiations influenced by what it must do in order to comply with the consent decree, but the obligations themselves are independent. If ALADS does not believe that we are engaging in collective bargaining negotiations appropriately, they have a remedy to pursue that through the Los Angeles Employee Relations Commission. Whether or not the Department engages in its collective bargaining negotiations is separate from whether or not the Department complies with the consent decree. They're two distinct questions, and that's why it's our position that the collective bargaining negotiations does not belong in this litigation. Would the union be in contempt of court if it ignored this decree in all of its labor negotiations? I'm not sure the union will have obligations pursuant to the consent decree, Your Honor. Maybe I don't understand your question. It's certainly going to affect items of bargaining. Yes, Your Honor. Issues are going to be on the table, and I just forecast that your position is you're going to pull this out and say, well, there's a consent decree. You can't go contrary to the district court's order in any respect. And they're going to say, well, we weren't parties to that litigation. And if that is the case, Your Honor, and if that is a violation of collective bargaining obligations, they have a separate and independent remedy to pursue those  issues. All right. And then you're saying that without regard to what the district court says in the consent decree, the agency of the city who resolves these labor disputes can ignore this consent decree also? No, Your Honor. I'm not saying that. This is the part I don't understand. Was ALADS involved in the original 1993 consent decree? No, Your Honor. They settled out of the case in approximately 1988. Now, when you say they settled out, they were a party. Yes. And they settled out before the consent decree was entered. That's correct. Okay. And now what you've been doing ever since then is trying to get implementation steps validated. Yes, Your Honor. Give me an example of a collective bargaining issue that would be affected by some of these implementation steps. Well, the selection processes for the coveted positions is contained in the bonus book, which is part of the memorandum of understanding between ALADS and the department. So to the extent that the department is modifying those selection processes in order to comply with the consent decree, that would be an example, Your Honor, of one issue that does pertain to the selection processes in the MOU. So when your opposing counsel said that you'd gone back to them 77 times, what was that for? That was because we devised an interim procedure to select candidates for coveted positions while we were engaging in the validation study and planning for the implementation efforts. What she characterized as those tweaks are to those interim processes and procedures. And one thing that I would like to emphasize, based on what the appellant mentioned, is that in 1997, the department was ordered to validate the selection processes. And the selection processes at that point had already been determined to be discriminatory. So ALADS should have been aware at that point that wholesale changes to the selection processes would be required in order to comply with the coveted position portion of the consent decree. And timeliness is the threshold inquiry. So returning to Judge Beeser's questions, if ALADS was untimely in moving to questions relating to the interplay between the consent decree and the collective bargaining obligations, the Court does not need to reach those issues because ALADS was untimely. And our position is ALADS should have known at least as early as 1997 that wholesale changes would need to be made to the coveted position selection processes. And they did not move to intervene at that point or at any point thereafter. To go back to this track that I'm on, so since the former practices were deemed discriminatory, ALADS would have no right to get the former practices into the next CBA if they were already declared discriminatory by the courts. That would certainly be the department's position in collective bargaining negotiations, yes, Your Honor. Ginsburg. I have another question. If we were to find that the request, the motion to intervene as a permissive basis was not an abuse, the denial of that was not an abuse of discretion, do we dismiss for lack of jurisdiction, or do we affirm? Well, because the Court only has jurisdiction if the timeliness requirement is met, I believe that you would affirm the district court's finding that there is no timely, that ALADS was untimely, and then that does have the effect of also dismissing on lack of jurisdiction. We affirm or reverse judgments, not findings. Judgments. Thank you, Your Honor. One other issue that I would like to mention is that the prejudice to the parties, which is what we had talked about in our brief, is potentially substantial if the department, if ALADS is permitted to intervene because of the fact that ALADS will be able to inject its collective bargaining grievances into this Federal Consent Decree litigation, and a separate remedy, in fact, the exclusive remedy is provided for by State law in order to do so. And that's why it's the appellee's position that the injection of those grievances here would delay and hinder the department's efforts to comply with the Consent Decree. If the Court has no further questions, thank you very much. Good morning, Your Honor. Dennis Harley for the plaintiffs. I just wanted to respond to the specific question about res judicata. Certainly, it would be the plaintiff's position that res judicata would not apply to the union. I also want to emphasize the union not only settled, they settled after the entry of a judgment against them as well as the department. They, in fact, settled while the case was pending here on the first appeal on the merits. But if for some reason an issue arose, and my understanding is in the record they have all these agreements, some 77 as of 2003. Those records, that process is an ongoing process. So if an issue came up, the res judicata is not going to apply because there's nothing in those court orders which addresses specifically the rights and responsibilities of unions since they settled out. The point is that they knew, certainly, about their interest in the case they were in. They do impose a quota on the employer, however, right? No. No. There was a quota. There was a quota under the former system, and the quota consisted of certain jobs. If you had two women incumbents in there, you couldn't have another woman go in unless one of those women left. That was the quota. The good faith efforts process, which is in effect now, has a goal, but it's not a quota. They don't come close to the, to it being a quota. Thank you. All right. Thank you, counsel. Your Honors, just briefly, I know that this is somewhat beyond record, but the Sheriff's Department has, in fact, argued in connection with the last time we went through the sexual harassment policy, and they have actually argued in that case that they were required to impose that policy and not bargain with ALADS because of the consent decrees. So I believe that, Your Honor, the question about race judicata is that the Department will argue to, both at the bargaining table and in any proceeding before the Employee Relations Commission, to enforce our bargaining rights, that they are bound by the provisions of the consent decree and the subsequent decrees of the trial court in imposing this wholesale change in the manner of selecting bonus candidates. The other point that I would like to make about ALADS, when ALADS was initially involved in this litigation, the only issue in the litigation was selection for promotion to sergeant. There was absolutely no issue in the litigation at the time ALADS was a party with regard to promotion to the bonus positions, which were our deputy-level positions. That came as a part of a separate lawsuit which was joined with the Bowman litigation after ALADS had settled out of the litigation and before the consent decree. So ALADS was never party to any litigation at all in which the provisions of the MOU relating to bonus selections was ever litigated. And, in fact, in 1997, what the Court entered was a stipulated judgment that the parties agreed to with no judicial finding that any provision of the MOU created or had any adverse impact, created any discrimination, or prolonged any discrimination. There was never any judicial finding that this provision of the MOU was discriminatory. The parties agreed, as part of a separate litigation that ALADS was never a party to, to include this bonus selection issue in this litigation. So ALADS never was a party to anything about that. And, finally, with regard to ‑‑ I'm sorry. I lost the other issue. I was going to ‑‑ the other issue is simply that at IRCCOM, the Department can and will argue res judicata, and that they are bound by the consent decrees in this case, which eliminate their obligation to party. Kennedy. That appeal goes up through the State system, right? That's correct. But what we're trying to do is get into a position, because, frankly, no county agency is going to say, oh, well, we don't have to listen to a Federal court. And that's basically the position that we would be in, saying we have an ‑‑ the Department has an obligation to bargain with us despite the provisions of this Federal court order, and a State agency or a county agency is simply not going to put themselves in a position of contramanding the direction that the Department contends the Federal court order requires. And unless the court has any further questions, I will submit. All right. Thank you, counsel. Thank you, Liz, for your time. ALADS v. Pitches is submitted.
judges: Beezer, Hall, Wardlaw